United States District Court
Middle District of Florida
Jacksonville Division

FREDREGUS ARNOLD,

　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　No. 3:19-cv-769-J-34PDB

EISMAN & RUSSO, INC.,

　　　　　Defendant.

---

## Report and Recommendation

In this case under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, the parties move under *Lynn's Food Stores, Inc. v. U.S. by & through U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982), for approval of a settlement under which defendant Eisman & Russo, Inc. ("E&R"), agrees to the entry of a final judgment for plaintiff Fredregus Arnold for $2000 in back wages and for attorney's fees and costs as determined by the Court. Doc. 24. Arnold seeks an award of $7600 in attorney's fees and $440 in costs. Doc. 26. E&R opposes the fee amount, contesting the rate and the hours and suggesting $2000 is reasonable. Doc. 30.

## I.　Background

E&R is an engineering and construction company. Doc. 1 ¶ 3; Doc. 11 ¶ 3. Arnold worked for E&R for less than six months from December 2018 to May 2019. Doc. 10 at 3; Doc. 14 at 3.

Arnold filed the complaint in June 2019—the month after his employment ended. Doc. 1. He brings one claim for unpaid overtime wages, contending E&R failed to pay him at an overtime rate for overtime hours he worked. Doc. 1 ¶¶ 19, 22–30. He

seeks a declaration that E&R willfully violated the FLSA, overtime pay, liquidated damages, attorney's fees, costs, expenses, and post-judgment interest. Doc. 1 at 5–6.

In August 2019, E&R answered the complaint. Doc. 11. E&R acknowledges Arnold brings a FLSA claim and admits allegations about jurisdiction, venue, the parties, and its maintenance of wage and hour records. Doc. 11 ¶¶ 1–11, 14, 25.

E&R states it is without knowledge of the following allegations and therefore denies them: it hired Arnold as a laborer around November 2018; it paid him an hourly rate of $15, increased to $25, and then decreased to $20; his employment ended on about May 17, 2019; he satisfied all conditions precedent to suing; he retained Bober & Bober, P.A., to represent him in the lawsuit; he agreed to pay the firm a reasonable fee for services; he intends to obtain wage and hour records; and he will seek leave to amend the complaint if warranted. Doc. 11 ¶¶ 16–18, 21, 25.

E&R denies the following allegations: Arnold was "directly essential" to the business; he was supposed to work normal work weeks for which he would receive— and was entitled to receive—"time and one-half" for overtime work; he worked overtime for which E&R did not pay him overtime wages; E&R failed to apprise him of his rights; E&R knowingly and willfully failed to pay him under the FLSA; E&R knowingly and willfully had a policy of not paying him overtime wages due; and he is entitled to liquidated damages and reasonable attorney's fees and costs. Doc. 11 ¶¶ 12, 13, 15, 20, 23, 24, 26–30.

E&R does not admit, deny, or state it is without knowledge of the allegation that Arnold "was not paid time-and-one-half his regular hourly rate of pay for all his hours in excess of forty in each week," Doc. 1 ¶ 19, instead answering, "To the extent that [he] was entitled to over-time, E&R properly compensated" him. Doc. 11 ¶ 19.

E&R adds a "general denial," stating it "denies each and every allegation, and all possible inferences and legal conclusions from each and every allegation that is not expressly admitted in this Answer." Doc. 11 at 4.

E&R raises five defenses: (1) it acted in good faith conformance with and reliance on Department of Labor regulations, rulings, orders, and interpretations; (2) it did not willfully violate or recklessly disregard the FLSA; (3) it acted in good faith and had reasonable grounds for believing it was complying with the FLSA; (4) Arnold's claim may be barred by estoppel if he fraudulently misrepresented how many hours he worked or failed to let E&R know about the extent of any overtime he worked; and (5) his claim is de minimis. Doc. 11 at 4–5.

In August 2019, Arnold answered the Court's interrogatories. Doc. 10. He represents the following facts. He worked as a field monitor and field supervisor monitoring debris removal. Doc. 10 at 3. He "was told" his regularly scheduled work period would be seven days a week, twelve hours a day. Doc. 10 at 3. His regular hourly rate of pay changed from $14 to $15 to $20 to $24. Doc. 10 at 3. His regular hours and overtime hours fluctuated. Doc. 10 at 3. For three weekly pay periods, E&R paid him a regular rate instead of an overtime rate for overtime hours worked, which should have been $22.50 when his rate was $15, and $36 when his rate was $24. Doc. 10 at 3. E&R owes him $1600 in wages, exclusive of liquidated damages. Doc. 10 at 3. He verbally complained to E&R while employed, and E&R responded it did not have to pay him for the overtime hours he had worked. Doc. 10 at 4. He has no records of the hours he worked. Doc. 10 at 4.

In October 2019, the Court conducted a phone conference to discuss the failure to follow the track notice and scheduling order.[1] Docs. 12, 15. The Court extended the

---

[1]The standard track notice and scheduling order for a FLSA action requires the defendant to file and serve a verified summary of all hours worked, including the rate of pay and wages paid, and serve a copy of the relevant time sheets and payroll records. Doc. 4 at 2. The defendant must do this within 30 days from when the plaintiff answers the Court's interrogatories. Doc. 4 at 2. The track notice and scheduling order further directs the parties to confer in person in a good-faith effort to settle within 30 days from when the defendant provides the rate-of-pay and wage information. Doc. 4 at 2.

Here, E&R did not file the verified summary by the deadline—September 3, 2019.

deadline for E&R to file a verified summary of all hours Arnold worked and provide the supporting paperwork. Doc. 17.

During the phone conference, Arnold's counsel moved to conduct the settlement conference by telephone.[2] Doc. 17 at 1. Because counsel provided no compelling reason for the Court to undertake the unusual action requested, the Court denied the motion but without prejudice to filing another motion if circumstances changed. Doc. 17 at 1. To give the parties more time to try to informally resolve the dispute without travel, the Court extended the deadline to conduct the in-person settlement conference to December 10, 2019. Doc. 17 at 2.

On October 15, 2019, E&R filed a verified summary of hours worked and wages paid. Doc. 14. The summary shows the following information. Arnold worked on two jobs while employed by E&R (the "Mexico Beach" job and the "DEP" job) for a total of twenty-one weeks. Doc. 14 at 3. For the first ten weeks, he worked as a "Monitor" at a regular hourly rate of pay of $14 and an overtime hourly rate of pay of $21. Doc. 14 at 3. For the next seven weeks, he continued to work as a "Monitor," but his regular hourly rate of pay increased to $15 and his overtime hourly rate of pay increased to $22.50. Doc. 14 at 3. (One intervening week shows a return to a $14 regular hourly rate of pay as a "Monitor." Doc. 14 at 3.) For two days during the fifteenth week of employment, he worked as a "Temporary Supervisor" at a regular hourly rate of pay of $24. Doc. 14 at 3. During his last three weeks of employment, he worked as a "Supervisor" at a regular hourly rate of pay of $20. Doc. 14 at 3.

For the eighteen weeks Arnold worked solely as a "Monitor," he worked a total of 317.75 overtime hours and was paid overtime wages for those hours. Doc. 14 at 3.

---

[2]The track notice directs that "counsel for Plaintiff and Defendant shall meet and confer in person in a good faith effort to settle all pending issues[.] … Exceptions to the requirement of meeting in person will rarely be granted; the parties are encouraged to make efforts to resolve this matter prior to the in-person meeting deadline (via telephone or otherwise)." Doc. 4 at 2–3.

For the week he worked for two days as a "Temporary Supervisor" and the remaining days as a "Monitor," he worked a total of 47.25 hours as a "Monitor" and 26.5 hours as a "Temporary Supervisor" and was paid overtime wages for 13 hours when he worked as a "Monitor." Doc. 14 at 3. For the three weeks he worked as a "Supervisor," he worked 25 hours one week, 83 hours one week, and 63.75 hours one week, and was paid for all hours worked at the regular hourly rate. Doc. 14 at 3.

Three weeks after receiving the verified summary and supporting paystubs, in November 2019, Arnold moved for sanctions under Federal Rule of Civil Procedure 11.[3] Doc. 18. Focusing on the weeks he had worked as a "Temporary Supervisor" and "Supervisor," he contended that the summary and paystubs show E&R paid him incorrectly. Doc. 18. He argued E&R could not have made a good-faith reasonable inquiry into the facts before answering the complaint and denying liability. Doc. 18 at 2–5.

E&R opposed the Rule 11 motion. Doc. 21. E&R observed Arnold had not made clear on which section of Rule 11 he relied, and E&R argued: a general denial of liability is not a Rule 11 violation; nothing in the verified summary or pay stubs definitively establishes E&R's liability—including whether Arnold was exempt from

---

[3] Rule 11(b) provides, "By presenting to the court a pleading, written motion, or other paper … an attorney … certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the document "is not being presented for any improper purpose …"; "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery"; and "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b)(1)–(4).

"A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c). "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Id.

overtime requirements as a supervisor—;[4] and whether E&R acted in good faith is a fact-intensive inquiry that cannot be answered by merely considering the verified summary. Doc. 21 at 2–3.

In December 2019, the parties moved for an extension of time to conduct the in-person settlement conference. Doc. 22. The Court granted the motion. Doc. 23.

In January 2020, the parties filed the current motion for approval of a settlement. Doc. 24. They explain E&R agrees Arnold's counsel is entitled to attorney's fees and costs in an amount to be determined by the Court. Doc. 24 at 1. They ask the Court to approve the settlement and then allow Arnold's counsel to move for fees and costs. Doc. 24 at 3.

To avoid delay that would occur from two reports and recommendations and two objection-and-response periods, the Court directed Arnold to file any motion for attorney's fees and costs by February 28, 2020. Doc. 25 at 4. Arnold filed the current motion for attorney's fees and costs, Doc. 26, and E&R filed the current response in opposition, Doc. 30.

The Court denied the motion for sanctions without prejudice to renewing the motion if the settlement is not approved. Doc. 32.

## II.   Joint Motion for Approval of the Settlement

### A.   *Joint Motion*

The parties explain there is no written settlement agreement but have agreed to these terms: E&R agrees to entry of a final judgment against it and for Arnold for

---

[4]The FLSA provides an exemption from overtime pay for an employee employed as a bona fide executive, administrative, professional, or outside sales employee. 29 U.S.C. § 213(a). To qualify, the employee must, among several other requirements, be compensated on a salary basis. 29 C.F.R. § 541.600(a).

$2000 for unpaid wages, and E&R agrees Arnold's counsel is entitled to attorney's fees and any costs under 29 U.S.C. § 216(b) in an amount to be determined by the Court. Doc. 24 at 1.

The parties state the settlement is a fair and reasonable compromise of disputed issues negotiated through an adversarial process. Doc. 24 at 2. They explain that while E&R maintains it owes Arnold nothing, it will pay him $2000 for wages. Doc. 24 at 2. They observe he alleges he was owed approximately $1600, exclusive of liquidated damages and attorney's fees or costs, and they contend that because there was no guarantee of entitlement to liquidated damages, the amount represents "an excellent recovery." Doc. 24 at 2.

The parties state Arnold's counsel offered separately to resolve the attorney's fees and costs for $4000: $3557.70 in fees and $442.30 in costs. Doc. 24 at 3. E&R would not agree. Doc. 24 at 3. The parties therefore ask the Court to determine the fees and costs separately, while recognizing Arnold may receive fees for the time spent on arguing about the fees and costs. Doc. 24 at 3.

**B.    *Law & Analysis***

Passed in 1938, the FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endanger[ ] the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).

If an employee proves his employer violated the FLSA, the employer must pay him unpaid wages (for up to two years or three if the employer intentionally violated the law, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988)), an equal amount as liquidated damages (absent the employer's proof of good faith and reasonable grounds for believing it was not violating the FLSA, 29 U.S.C. § 260), and attorney's fees and costs. 29 U.S.C. § 216(b).

To foster the FLSA's purpose and to prevent an employer from using its superior bargaining position to take advantage of an employee, the Eleventh Circuit, in *Lynn's Food Stores, Inc. v. U.S. by & through U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982)*,* placed limits on the ability of private parties to settle a FLSA case. *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013). To do so, they must present their agreement to the court, and the court must scrutinize it for fairness. *Id.* at 1306–07. If the agreement reflects a fair and reasonable compromise over a disputed issue, the court may approve it to promote the policy of encouraging settlement. *Lynn's*, 679 F.2d at 1354.

A court should presume a settlement is fair and reasonable. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Factors pertinent to fairness and reasonableness may include the existence of collusion behind the settlement; the complexity, expense, and likely duration of the case; the stage of the proceedings and the discovery completed; the probability of the plaintiff's success on the merits; the range of possible recovery; and the opinions of counsel. *Leverso v. SouthTrust Bank of Ala. Nat. Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994).

A plaintiff cannot waive his right to liquidated damages in a FLSA settlement if there is no genuine dispute about whether he is entitled to them. *Nall*, 723 F.3d at 1307; *see Patterson v. Acad. Fire Prot., Inc.*, No. 3:13–cv–87–J–34JBT, 2014 WL 169812, at *5–6 (M.D. Fla. Jan. 8, 2014) (unpublished) (settlement reasonable despite absence of liquidated damages where genuine dispute existed over whether plaintiff was entitled to them and parties agreed there was no evidence to support them).

Here, considering the parties' representations and a review of the complaint, the answer and defenses, Arnold's answers to the Court's interrogatories, E&R's verified summary, the motion for sanctions and response, the motion to approve the settlement agreement, and the motion for attorney's fees and costs and response, the agreement is a fair and reasonable compromise of at least one disputed issue (availability of liquidated damages).

8

The parties are represented by counsel. There is no stated or apparent collusion behind the settlement. The case is not complex but could take more than a year to resolve through the ordinary judicial process. Through the court-ordered discovery exchange, the parties have the core information needed to rationally decide whether to settle. Based only on the information in the record, Arnold appears to have a meritorious claim to overtime wages, but whether E&R could prove its good faith and reasonable reliance to avoid having to pay liquidated damages is genuinely disputed. Resolving that dispute without settlement would require costly discovery and continued litigation that would overwhelm actual damages. The parties believe that the settlement is reasonable and that Arnold has made an "excellent recovery," Doc. 24 at 2, having recovered more than his previous estimate of actual damages— $2000 versus $1600—, which is higher than the mid-point of the range of recovery with liquidated damages considered—$0 to $3200. The agreement contains nothing commonly found objectionable.[5] The motion does not ask the Court to retain jurisdiction to enforce the agreement.[6] Approval is warranted.

---

[5]Some judges will not approve an agreement to settle a FLSA overtime claim that includes a general release because, without an indication of the value of the released claims, the fairness and reasonableness of the compromise cannot be determined. *See, e.g., Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351−52 (M.D. Fla. 2010).

Some judges will strike a non-disparagement provision because its placement of a prior restraint on one's ability to speak freely about the case contravenes public policy and the First Amendment. *See, e.g., Loven v. Occuquan Grp. Baldwin Park Corp.*, No. 6:14-cv-328-Orl-41TBS, 2014 WL 4639448, at *3 (M.D. Fla. Sept. 16, 2014) (unpublished).

And some judges will strike a no-reemployment provision because its impact could be substantial and result in an unconscionable punishment for asserting FLSA rights. *See, e.g., Nichols v. Dollar Tree Stores, Inc.*, No. 1:13-cv-88(WLS), 2013 WL 5933991, at *5–6 (M.D. Ga. Nov. 1, 2013) (unpublished).

[6]In the introductory paragraph to the motion for approval of the settlement, the parties ask the Court to retain jurisdiction to decide attorney's fees and costs. Doc. 24 at 1. Because the Court is deciding the motion for attorney's fees and costs now, there is no need to retain jurisdiction for that issue. They do not ask the Court to retain jurisdiction for any other reason, and no reason to do so is apparent.

### III.    Motion for Attorney's Fees and Costs

#### A.    *Motion and Declaration*

Arnold seeks $7600 in attorney's fees for 19 hours of work at $400 an hour by Peter Bober, Esquire; $440 in costs for the filing fee and service of process; and post-judgment interest on any award. Docs. 26, 26-1–26-3. E&R disputes only the fees, and specifically the requested hours and the requested rate.

Arnold explains he offered to resolve the case pre-suit based on paystubs and records, but E&R offered nothing, and the case proceeded.[7] Doc. 26 at 2.

Arnold explains that in December 2019 (after the settlement had been agreed upon), his counsel offered to settle the fees and costs for $3800 (a 35 percent reduction in the actual fees and costs incurred), but E&R was unwilling to pay more than $2000 for fees and costs. Doc. 26 at 3. Arnold lists seven dates between July and December 2019 in which he "sent settlement related correspondence" to try to resolve the case. Doc. 26 at 3. Arnold contends higher fees and costs could have been avoided "if the Defendants [sic] had not asserted frivolous defenses and had been reasonable" and $2000 is "simply ridiculous" because E&R has been "vexatious" in litigating the case. Doc. 26 at 4. Arnold contends E&R's response in opposition to the motion for sanctions "is so poorly drafted, it is almost as if the Defendant put a blindfold on, did not *read* the Rule 11 Motion, or worse, preferred to completely ignore reality." Doc. 26 at 4 (emphasis in original). Arnold contends there should be "no discount" on fees "based on the Defendant's behavior" and E&R should have resolved the case earlier. Doc. 26 at 4.

---

[7]Arnold states his overtime claim is two-fold: getting paid at a regular rate instead of an overtime rate for overtime hours worked and, for some weeks, getting paid the wrong regular rate leading to the wrong overtime rate. Doc. 26 at 2.

Arnold states that Bober emailed billing records to defense counsel before moving for fees and costs to confer on any objections and avoid incurring more fees for litigating fees, and defense counsel responded that Bober should file the motion and billing records and offered no objections or feedback. Doc. 26 at 5.

Arnold explains Bober spent 13.5 hours litigating the case and 5.5 hours preparing the motion for attorney's fees and costs, for a total of 19 hours. Doc. 26 at 10. Arnold provides two itemized billing statements—one with the time spent preparing the motion for fees and costs and one without. Docs. 26-1, 26-3. He represents that Bober has exercised billing judgment as reflected on the billing statements. Doc. 26 at 11. Arnold contends he is entitled to fees for all time spent on the case until the Court enters an order on fees, and observes E&R acknowledged in the joint motion for settlement approval that Arnold would be entitled to fees for preparing the current motion. Doc. 26 at 11.

Arnold seeks a $400 hourly rate for Bober. Doc. 26 at 8. He contends that rate is appropriate because E&R did not object to that rate when asked before this motion was filed, that rate is reasonable based on other rates this Court has awarded, and that rate is reasonable based on Bober's experience. Doc. 26 at 8. He repeats information from Bober's declaration, discussed later. *See* Doc. 26 at 8.

Arnold contends the fee should not be reduced considering the damages amount because Arnold succeeded on his overtime claim and, in FLSA actions, attorney's fees often exceed damages because of the nature of the claims. Doc. 26 at 11–13.

As to costs under 28 U.S.C. § 1920, Arnold seeks $400 for the filing fee and $40 for service of the complaint and summons. Doc. 26 at 13–14. He also requests post-

judgment interest from the date of any final judgment under 28 U.S.C. § 1961(a).[8] Doc. 26 at 14.

In a declaration, Bober states the following facts. Doc. 26-2. He is a partner at Bober & Bober, P.A. Doc. 26-2 ¶ 1. He is familiar with all aspects of this case. Doc. 26-2 ¶ 1. He received a Bachelor of Arts from the University of Texas in 1994 and was graduated from the University of Pennsylvania Law School in 1997. Doc. 26-2 ¶ 2. He has been a member of The Florida Bar since 1997 and is a member of all United States District Courts in Florida, New York, and Washington, D.C. Doc. 26-2 ¶ 2. Since 2002, his practice has focused primarily on wage and hour litigation. Doc. 26-2 ¶ 2. His billable hourly rate for this case is $400, which is reasonable for attorneys with his background and experience in the Middle District of Florida. Doc. 26-2 ¶ 3. All time described in the billing records was reasonably and necessarily incurred. Doc. 26-2 ¶¶ 4, 5.

## B.   *Law & Analysis*

### 1.   *Framework*

Under the FLSA, in addition to any judgment awarded to a plaintiff, a court "shall ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Based on that language, a reasonable fee award is mandatory for a prevailing FLSA plaintiff. *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985).

---

[8]Arnold twice discusses reserving the right to supplement the motion for fees and costs. First, he states he reserves the right to supplement the motion for any further fees incurred. Doc. 26 at 11 n.2. Later, he states he reserves "the right to seek additional costs allowable under the FLSA, if any, but not enumerated in § 1920, but limits the amounts sought in his Bill of Costs to those costs recoverable pursuant to § 1920." Doc. 26 at 13 n.3. This report and recommendation does not address whether further fees or costs would be allowable without information on what they would be.

To decide attorney's fees in a FLSA action, a court applies the lodestar approach in *Hensley v. Eckerhart*, 461 U.S. 424 (1983).[9] *See, e.g.*, *P&k Rest. Enter., LLC v. Jackson*, 758 F. App'x 844, 850 (11th Cir. 2019). The "starting point" is a calculation of the lodestar, which is "the number of hours reasonably expended … multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. To arrive at a reasonable amount, a court then must consider factors that may require an adjustment of the lodestar. *Id.* at 433–37.

2.    *Burden*

The movant has "the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Id.* at 437. To satisfy that burden, the movant must produce more than an affidavit of the lawyer who performed the work. *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The movant also must establish that an adjustment of the lodestar is necessary, and to do so must present "specific" evidence. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010).

If evidence is inadequate, a court may reduce the award, *Hensley*, 461 U.S. at 433–34, make the award "on its own experience," *Norman*, 836 F.2d at 1303, exclude the award, *U.S. ex rel. Jacobs v. Patrol Servs. Inc.*, 202 F. App'x 357, 363–64 (11th Cir. 2006), or award fees at the lowest rate, *Duckworth v. Whisenant*, 97 F.3d 1393, 1398 (11th Cir. 1996). Whatever the court decides, its order "must allow meaningful review"; the court "must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Norman*, 836 F.2d at 1304. "But the district

---

[9]FLSA cases require an additional consideration: judicial review of the reasonableness of attorney's fees to assure not only that counsel is adequately compensated but also that no conflict of interest taints the amount the employee recovers under the settlement agreement. *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009).

Here, because the settlement terms were negotiated separately, there is no conflict.

court's duty to provide an adequate explanation does not mean that it must exhaustively detail, hour-by-hour, what fees it excluded. The rule is more practical." *Walker v. Iron Sushi LLC*, 752 F. App'x 910, 913 (11th Cir. 2018).

An opponent of a fee application also has obligations. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). For a court to perform its duties, "'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'" *Norman*, 836 F.2d at 1301. "Generalized statements that the time spent was reasonable or unreasonable … are not particularly helpful and not entitled to much weight." *Id.*; *see Rodriguez v. Molina Healthcare, Inc.*, No. 19-13965, 2020 WL 1487263, at *6 (11th Cir. Mar. 26, 2020) (unpublished) ("Notably, Molina has not identified … the particular hours it believed were duplicative or should have been disallowed[.] Instead, Molina simply asserts that counsels' billing records evidence multiple instances of duplicative efforts and generally points to time billed for screening class members, preparing notices of opt-ins, and drafting disclosures and written discovery responses. Molina, as the party opposing the fee application, had an obligation to identify the hours that should be excluded with some degree of specificity.") (internal quotation marks omitted).

In challenging the number of hours and the rate, E&R contends Arnold "spends much time arguing about liability and settlement efforts in order to justify $7,600 in attorneys' fees for a complaint filed pursuant to the [FLSA] that took Plaintiff's counsel half an hour to draft." Doc. 30 at 2.

3.   *Hours*

The first part of the lodestar approach requires a court to determine the hours reasonably expended and exclude any that had not been. *Hensley*, 461 U.S. at 433–34. A lawyer "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434.

14

A court may award fees for hours reasonably expended by counsel in litigating fees. *Johnson v. Univ. College of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1207 (11th Cir. 1983).

Exclusions are left to a district court's discretion. *Norman*, 836 F.2d at 1301. When a court determines hours are too high, it has two choices: "it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap it Up*, 548 F.3d 1348, 1350 (11th Cir. 2008). A court may not "double discount" by, for example, reducing hours through an hour-by-hour analysis and then including those hours in an across-the-board cut. *Id.* at 1351–52.

Here, Arnold offers evidence that Bober worked a total of 19 hours by providing the itemized billing statements, which are detailed by date, description, hours, amounts, and lawyer (all entries are for Bober), and Bober's declaration, which includes his statements he provided the legal services and expended the time reflected in the statements and that all time billed was reasonably and necessarily incurred. Docs. 26-1, 26-2, 26-3. The statements reflect:

| Date | Entry | Hrs. |
|---|---|---|
| 05/29/19 | Consultation with Arnold about unpaid overtime wage claim | 1.20 |
| 06/07/19 | Draft pre-suit demand letter | 0.50 |
| | Draft complaint for damages | 0.50 |
| 06/10/19 | Review time and net payroll records sent by E&R | 0.70 |
| | Draft correspondence to Greene at E&R | 0.10 |
| | Draft correspondence to Arnold about records received from E&R | 0.10 |
| 06/11/19 | Draft letter to Arnold regarding settlement issues | 0.40 |
| | Call with Arnold about [redacted] | 0.30 |
| | Draft correspondence to Greene at E&R about settlement and damages calculations | 0.80 |
| 06/19/19 | Follow-up with Arnold about [redacted] | 0.10 |
| 06/20/19 | Draft FOIA request regarding prior claims against E&R | 0.20 |
| 06/26/19 | [redacted] | 0.30 |
| 07/02/19 | Call to Arnold to discuss [redacted] | 0.10 |
| | Draft letter to Arnold about [redacted] | 0.10 |
| 07/05/19 | Draft letter to Arnold about [redacted] | 0.10 |
| 07/09/19 | Draft certificate of interested persons | 0.20 |
| 07/11/19 | Research regarding FLSA lawsuits against E&R | 0.40 |
| 07/15/19 | Draft letter to DOL regarding Arnold | 0.10 |
| 07/17/19 | Review docket entry 4 (track notice of FLSA cases) and forward to Greene | 0.10 |
| | Review affidavit of service and follow up with process server to insure validity | 0.10 |
| 07/18/19 | Call with opposing counsel about case, issues, and settlement | 0.30 |
| 07/22/19 | Review 07/17/19 correspondence from DOL | 0.00 |

| | | |
|---|---|---|
| 07/23/19 | Draft correspondence to opposing counsel about affidavit of service, and respond to opposing counsel about request for extension of time and other inquiries. | 0.20 |
| 07/29/19 | Draft settlement correspondence to opposing counsel to resolve case, with damage calculations | 0.40 |
| 08/05/19 | Call with Arnold to discuss [redacted] | 0.50 |
| | Draft answers to court interrogatories | 0.40 |
| | Draft notice of filing answer to court interrogatories | 0.00 |
| | Call with Arnold about [redacted] | 0.10 |
| 08/08/19 | Call to opposing counsel (return call) about case issues | 0.10 |
| 08/22/19 | Review 8/22/19 email from DOL | 0.10 |
| 10/04/19 | Draft motion for rule 11 sanctions | 2.00 |
| 10/11/19 | Participate in telephonic hearing with Magistrate Judge | 0.30 |
| 10/16/19 | Draft correspondence to opposing counsel about Rule 11 sanctions | 0.10 |
| 11/08/19 | Respond to correspondence from opposing counsel about Rule 11 motion (not filed) | 0.10 |
| 11/22/19 | Draft correspondence to opposing counsel about trying to resolve the case, and E&R's request for extension of time to respond to Rule 11 motion. | 0.10 |
| 11/26/19 | Draft correspondence to opposing counsel about need to confer per court order requiring in-person settlement meeting | 0.10 |
| | Review and respond to opposing counsel about settlement of case and avoid escalating fees/costs | 0.10 |
| | Respond to opposing counsel's correspondence about his conflating willfulness for statute of limitations issues vs. liquidated damages; provide case law | 0.20 |
| 12/03/19 | Draft follow-up correspondence to opposing counsel about settlement of case, having not heard response | 0.10 |
| | Draft correspondence to opposing counsel about meeting to discuss settlement per order (in person) | 0.10 |
| 12/06/19 | Draft correspondence to opposing counsel about Dec. 10 deadline to meet approaching, and coordination of meeting | 0.10 |
| 12/09/19 | Draft letter to Arnold about [redacted] | 0.20 |
| | [redacted] | 0.10 |
| 12/10/19 | Draft settlement correspondence to opposing counsel and requirement to meet in person by the end of the day. | 0.20 |
| | Draft email to opposing counsel about settlement to avoid litigating fees and seeking fees for fees | 0.10 |
| | Draft correspondence to opposing counsel about joint motion for extending deadline to meet in person | 0.10 |
| 12/30/19 | Draft joint motion to approve settlement | 0.50 |
| | Draft follow-up correspondence to opposing counsel about getting case settled and having not received response | 0.10 |
| | Draft correspondence to opposing counsel about filing joint motion to approve settlement | 0.10 |
| | Review correspondence from opposing counsel advising he is in Ireland/cannot respond | 0.10 |
| 01/06/20 | Draft follow-up correspondence on getting joint motion filed having received no response | 0.10 |
| 02/03/20 | Draft correspondence to opposing counsel about settlement of attorneys' fees to avoid litigating fees for fees | 0.10 |
| 02/22/20 | Draft motion for fees and costs | 5.50 |
| **Total** | | 19 |

The undersigned has carefully reviewed each entry, and no entry appears excessive, redundant, or otherwise unnecessary.[10]

E&R makes four arguments for exclusion of some hours.

First, E&R argues the Court should not award fees for 1.2 hours Bober worked on May 29, 2019, for "Consultation with Fredregus Arnold about unpaid overtime wage claim" (the first billing entry), Doc. 26-3 at 1, because Bober's firm advertises a free consultation for clients. Doc. 30 at 3. E&R attaches a photograph of Bober's firm website advertising a "Free Case Evaluation." Doc. 30-1. Observing that time spent procuring a potential plaintiff is not compensable and that a party cannot seek fees from an opposing party for work it would not bill a client, E&R contends that time here is not compensable. Doc. 30 at 3–4. E&R relies on *Roccisano v. Twp. of Franklin*, Case No. 11–6558 (FLW)(LHG), 2015 WL 3649149, at *10 (D.N.J. June 11, 2015) (unpublished), in which the court declined to award fees for an initial meeting with the plaintiff where her counsel advertised a "Free Initial Consultation" on the firm's website because hours not billed to a client are not properly billed to an adversary.

Without more, E&R's argument is unavailing. E&R offers no evidence to explain the context of the advertisement, which could be meant only to assure a potential client that the firm will not charge the potential client for a case evaluation if the potential client does not hire the firm or the firm does not accept representation. And E&R offers no evidence that the initial meeting to consult with Arnold about his claim, which was immediately followed by the substantive work of drafting a demand letter and the complaint for which prior information gathering would have been required, equates with the "free case evaluation" advertised.

---

[10]The undersigned assumes from context that the redacted information concerns privileged attorney-client communications. E&R makes no request to review the information, and, in the interest of judicial economy, requiring Arnold to submit the information under seal for review is unnecessary.

Second, observing that counsel billed in one-tenth-an-hour increments, E&R argues—identifying no particular entry—that some entries likely did not take six minutes to complete and a reduction therefore is appropriate. Doc. 30 at 4.

An attorney "is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12. Billing in one-tenth-an-hour increments is customary to avoid the higher risk of bill inflation when billing in larger increments, *Republican Party of Minn. v. White*, 456 F. 3d 912, 920 (8th Cir. 2006), though hours may be inflated even with one-tenth-an-hour increments, *B & G Min., Inc v. Dir., Office of Workers' Comp. Programs*, 522 F.3d 657, 666 (6th Cir. 2008).

A reduction for billing in one-tenth-an-hour increments is unwarranted. E&R has not met its burden of identifying possibly inflated entries, *see Rodriguez*, 2020 WL 1487263 at *6, stating only generally that "Defendant takes issue with ... time entries for tenth-hour increments for matters that more than likely do not take 6 minutes," Doc. 30 at 4. While an action with hundreds or thousands of entries may warrant this type of generalized supposition, this action involving only 53 entries does not. Moreover, no entry appears inflated, and no entry includes time for something that could be considered clerical or otherwise non-compensable. Examples of entries for which Bober billed 0.1 hours in 2019 are: June 10, drafting correspondence to E&R's employee; June 19, communicating with Arnold; July 17, reviewing an affidavit of service and following up with the process server; August 8, calling opposing counsel about case issues; and August 22, reviewing an email from the Department of Labor. Doc. 26-3 at 1–3. Notably, Bober showed billing judgment by not billing for some work in 2019: on July 22 for reviewing correspondence from the U.S. Department of Labor, and on August 5 for drafting a notice of filing answers to the Court's interrogatories. *See* Doc. 26-3 at 2–3.

Third, E&R argues the Court should award no attorney's fees for the time Bober spent on the Rule 11 motion, reasserting that "a general denial of liability is

18

not a violation of Rule 11." Doc. 30 at 4. The following entries in 2019 reflect time spent on the motion (totaling 2.2 hours): 2 hours on October 4 to draft it; 0.1 hour on October 16 to draft correspondence to E&R's counsel about the not-yet-filed motion; and 0.1 hour on November 8 to respond to correspondence from E&R's counsel about the not-yet-filed motion. Doc. 26-3 at 3. E&R cites *Williams v. R.W. Cannon, Inc.*, No. 08-60168-CIV, 2008 WL 4372894, at *3 (S.D. Fla. Sept. 24, 2008) (unpublished), in which the court imposed Rule 11 sanctions in a FLSA action not because the defendants denied liability based on an arguable legal contention that the plaintiff fell under an exemption but because they frivolously denied allegations in the complaint that the plaintiff worked as a warehouseman; that the individual defendant was the sole director of a corporate defendant, was responsible for the day-to-day operations of the company, hired the plaintiff, and controlled the plaintiff's employment and compensation; and that the defendants are deemed an "employer" and "enterprise engaged in commerce" with gross receipts of more than $500,000.

A reduction for time spent on the Rule 11 motion is unwarranted. That E&R disagrees with the motion does not mean the hours spent on it were not reasonably expended. Moreover, setting aside that E&R denied more than just liability generally in its answer, the motion presents an arguably meritorious argument that E&R made no reasonable inquiry before answering the complaint—E&R claimed no exemption in its answer and affirmative defenses, and its records showed no salaried wages and no overtime wages for certain overtime hours worked.[11] *See generally* Doc. 21.

Fourth, E&R argues the Court should award no fees incurred after December 9, 2019, because E&R served an offer of judgment on that date under Federal Rule of Civil Procedure 68 for more than the damages agreed upon in the settlement (an offer of $2200 to Arnold and $2000 to Bober for attorney's fees and costs). Doc. 30 at 4; Doc. 30-2 (offer of judgment). Bober billed 6.9 hours after December 9, 2019, including the

---

[11]In the response to the motion for sanctions, E&R does not elaborate on the supervisor argument. *See generally* Doc. 21.

last billing entry for drafting the fees motion on February 22, 2020, totaling $2760 in fees ($400 multiplied by 6.9 hours). Doc. 26-3 at 4. E&R contends, "Clear and unambiguous offers of judgment that exceed [the] amount of final judgment, pursuant to Rule 68, determine the dates for which attorneys' fees can be collected." Doc. 30 at 4. E&R cites *Suarez v. Aeroservicios USA, Inc.*, 10-20601-CIV-KING/BANDSTRA, 2012 U.S. Dist. Lexis 197028, at *5–6 (S.D. Fla. Jan. 6, 2012) (unpublished), in which the court held clear and unambiguous offers of judgment governed the dates for calculating attorney's fees in a FLSA case where the plaintiffs rejected the offers, proceeded to trial, and obtained less than the amounts offered.

Federal Rule of Civil Procedure 68 provides, "[A] party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms." Fed. R. Civ. P. 68(a). "If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ P. 68(d).

"Costs" under Rule 68 do not include attorney's fees under the FLSA. *Arencibia v. Miami Shoes, Inc.*, 113 F.3d 1212, 1214 (11th Cir. 1997). Still, the Eleventh Circuit has upheld a district court's decision to decline to award fees for hours worked after an offer of judgment in a FLSA action, even where the offer of judgment was less than the damages for which the plaintiffs ultimately settled. *Walker*, 752 F. App'x at 914–16. The Eleventh Circuit observed that even though FLSA attorney's fees are not "costs" under Rule 68, "a rejected settlement offer is an appropriate factor to consider in assessing the reasonableness of a request for attorney's fees," particularly considering the relationship to the final result obtained.[12] *Id.* at 915 (and noting that

---

[12]In *Marek v. Chesny*, the Supreme Court ruled that, in a case under 42 U.S.C. § 1983, attorney's fees under 42 U.S.C. § 1988 are "costs" under Rule 68, and attorney's fees therefore could not be recovered for work after an offer of judgment that was higher than the damages awarded at trial. 473 U.S. 1, 9–11 (1985). The Supreme Court explained that Rule 68 is designed to encourage settlement and works in conjunction with awarding "reasonable" fees under § 1988 because, "where a rejected settlement offer exceeds the ultimate recovery, the plaintiff—although technically the prevailing party—

another circuit has held the same, citing *Haworth v. State of Nev.*, 56 F.3d 1048, 1050 (9th Cir. 1995) ("We vacate the award of attorney fees, not because the Rule 68 offer precluded any award for attorney fees incurred after the offer was made, but because

---

has not received any monetary benefits from the postoffer services of his attorney." *Id.* at 11. In *Walker*, the Eleventh Circuit recognized *Marek* does not apply to FLSA cases because attorney's fees under the statute are not Rule 68 "costs," but cited similar reasoning regarding reasonableness of fees if damages are ultimately lower than the rejected offer. *Walker*, 752 F. App'x at 914–16.

In *Walker*, the court considered the settlement offer at the first step of the lodestar calculation in determining the number of reasonable hours expended, though the language of considering any offer of judgment and "final results obtained" sounds like a consideration in adjusting the lodestar. *See Hensley*, 461 U.S. at 436 (if a plaintiff achieved limited success, the lodestar may be excessive even if the plaintiff's claims were "interrelated, nonfrivolous, and raised in good faith … . [T]he most critical factor is the degree of the success obtained. … That the plaintiff is a 'prevailing party' therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.").

The court in *Walker* cited earlier cases considering the amount of damages and any results obtained as one of the twelve factors to determine reasonable fees in *Johnson v. Ga. Hwy. Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *overruled on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87, 91–93 (1989). *See Walker*, 752 F. App'x at 915. The factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the lawyer due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the lawyer; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

The Supreme Court has repeatedly criticized the *Johnson*-centric approach—one widely used *before* the Court adopted the lodestar approach—observing it "gave very little actual guidance to district courts" and lamenting that "[s]etting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). The Court explained the lodestar approach, in contrast, produces a rough approximation of the fee a prevailing lawyer would have received from a paying client, is readily administrable, and is objective. *Id.* at 551–52. "The *Johnson* factors may be relevant in adjusting the lodestar amount, but no one factor is a substitute for multiplying reasonable billing rates by a reasonable estimation of the number of hours expended." *Blanchard*, 489 U.S. at 94.

Whether the offer of judgment is considered for the first part of the lodestar (for reasonable hours expended) or for any lodestar adjustment makes no difference here.

the district court should have taken into consideration the reasonableness of the plaintiffs proceeding to trial and recovering approximately $240,000 less than what they could have had by accepting the settlement offer.")). The court concluded an offer of judgment is not dispositive regarding fees but is a "relevant factor that the district court has discretion to consider." *Id.*

A reduction for the hours spent after the December 9, 2019, offer of judgment is unwarranted. The difference to Arnold between the $2200 offer of judgment and the ultimate $2000 settlement amount is minimal, and the $2000 offer for fees and costs equaled less than half of Bober's fees incurred to that date. Other than drafting the motion for fees and costs, Bober spent most of his time after December 9 not billing unnecessary hours to increase fees but communicating about and finalizing the ultimate settlement, including drafting the settlement motion (filed one month after the offer of judgment), which would have had to have been done regardless of whether Arnold accepted the offer of judgment. *See* Doc. 26-3 at 4. The joint motion for settlement approval recognizes Arnold could seek fees for litigating any fees issue, Doc. 24 at 3, and Arnold incurred no costs after the offer of judgment.

In short, Arnold has established that the 19 hours Bober spent working on the case are reasonable, and E&R has not shown otherwise.

4.    *Rate*

The second part of the lodestar approach requires a court to determine the reasonable hourly rate. *Hensley*, 461 U.S. at 433–34. A "reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. The relevant legal community is where the case is filed. *Barnes*, 168 F.3d at 437; *see, e.g.*, *Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 202 (11th Cir. 2012) ("Because the case was filed in Mobile, the district court properly found that Mobile was the relevant market."). "If a fee applicant

desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *Barnes*, 168 F.3d at 437.

"No two lawyers possess the same skills, and no lawyer always performs at the same level of skill." *Norman*, 836 F.2d at 1300. "Accordingly, [t]he parties ought to provide the court with a range of market rates for lawyers of different skill levels (perhaps as measured by quality and quantity of experience) involved in similar cases with similar clients, so that the court may interpolate the prevailing market rate based on an assessment of the skill demonstrated in the case at bar." *Id.*

"[T]he best information available to the court is usually a range a range of fees set by the market place, with the variants best explained by reference to an attorney's demonstrated skill." *Id.* at 1301. "It is the job of the … court … to interpolate the reasonable rate based on an analysis of the skills enumerated … which were exhibited by the attorney in the case at bar, remembering that the highest market rates are not theoretical rates for the perfect lawyer and that the lowest market rates are being earned not by imbeciles but by men and women who are proud to say they are attorneys, who are good enough to earn a livelihood from the profession, and who are at least well enough qualified to be admitted to the bar." *Id.*

"[A] court should hesitate to give controlling weight to prior awards, even though they may be relevant. … Prior awards are not direct evidence of market behavior." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1355 (11th Cir. 2000) (internal citations omitted); *see Callaway v. Acting Comm'r of Soc. Sec.*, No. 19-11417, 2020 WL 1158470, at *4 (11th Cir. Mar. 10, 2020) (unpublished) (remanding for reconsideration of rates where district court awarded rate based on other cases finding that rate to be reasonable but offered no explanation why that rate was reasonable based on the training, skill, and experience of attorneys in case).

Based on Bober's declaration and the undersigned's knowledge of reasonable rates in Jacksonville, $400 is higher than the prevailing market rate in Jacksonville for similar services by lawyers of reasonably comparable skills, experience, and reputation. Bober's services primarily included making a demand, drafting a basic FLSA complaint, exchanging core discovery, and negotiating settlement, all for a single plaintiff in a straightforward FLSA matter. His skills and experience are strong—he has been a lawyer for more than 20 years and has specialized in wage and hour litigation for most of those years—and that strength is reflected in the relatively short time he had to spend on substantive tasks and the absence of time to research law that a less skilled and less experienced lawyer would have had to expend. Bober's reputation is unknown; he provides nothing on this point, and the undersigned is unfamiliar with him. His office is in the Southern District of Florida. He has appeared in the Middle District of Florida in 125 cases but never before the undersigned. With nothing to suggest anything to the contrary, the undersigned will assume his reputation is ordinary. *See* Doc. 26-2. Considering those factors, the prevailing market rate for similar services by lawyers of reasonably comparable skills, experience, and reputation is $350.

That E&R did not specifically object to the $400 hourly rate in conferring on the motion before its filing is not a reason to allow that rate now. E&R shows no valid waiver, abandonment, or stipulation. *See* Local Rule 4.15 ("No stipulation or agreement between any parties or their attorneys, the existence of which is not conceded, in relation to any aspect of any pending case, will be considered by the Court unless the same is made before the Court and noted in the record or is reduced to writing and subscribed by the party or attorney against whom it is asserted.").

Bober's customary rate of $400 may be the prevailing market rate in the Southern District of Florida, where the cost of living tends to be higher than here, but communities in the Southern District of Florida are not relevant for determining the

prevailing market rate in this action. As E&R observes, Bober does not discuss prevailing market rates in Jacksonville. Doc. 30 at 2–3.

Arnold cites recent FLSA cases in which this Court permitted hourly rates of $400 or more. Doc. 26 at 8 (citing *Lockwood v. CIS Servs., LLC*, 3:16-CV-965-J-39PDB, 2019 WL 2226126, at *13–15 (M.D. Fla. May 3, 2019) (unpublished), *report and recommendation adopted*, 2019 WL 3383628 (M.D. Fla. June 13, 2019) (unpublished); *Amadi v. Ace Homecare, LLC*, 8:17-cv-2191-T-02JSS, 2019 WL 1392453, at *3 (M.D. Fla. Mar. 28, 2019) (unpublished); and *Adams v. Fritz Martin Cabinetry, LLC*, 2:18-cv-83-FtM-99MRM, 2018 WL 4215892, at *4 (M.D. Fla. Sept. 5, 2018) (unpublished)).

As E&R observes, Doc. 30 at 2, the rates in those cases were unopposed. *Lockwood* is entitled to little or no weight here because the rates were based on a bargained-for provision in a settlement agreement.[13] *See Lockwood*, 2019 WL 2226126, at *18. The others are entitled to little or no weight here because they involve different legal communities (albeit in the same district) and provide no or insufficient information about the skills, experience, reputations, and services involved necessary to determine similarity and concomitant weight. *See Amadi*, 2019 WL 1392453, at *3; *Adams*, 2018 WL 4215892, at *4.

E&R contends $250 is reasonable. Doc. 30 at 2. E&R offers no persuasive support for that contention.

---

[13]In *Lockwood*, the undersigned recommended, and the district judge permitted, rates between $325 and $475. *See Lockwood*, 2019 WL 2226126, at *18. The undersigned did not analyze the pertinent factors for determining the prevailing market rate, observing "[b]argained-for provisions on attorney's fees in a settlement agreement control the issue of attorney's fees" and "[b]ecause the parties agree to the requested rates as part of the settlement agreement, … using those rates is appropriate." *Id.* The case was a collective action by fifty-five insurance adjusters. *Id.* at *1. Other than *Lockwood*, there appear to be few, if any, recent cases in the Jacksonville Division discussing hourly rates for fees in a FLSA action.

E&R cites *Patterson*, 2014 WL 169812. There, in adopting a report and recommendation and approving a FLSA settlement that included fees for a lawyer whose hourly rate was $350 (effectively $300) for work done in 2013, this Court (Howard, J.) observed in a footnote: "[The] hourly rate appears to be excessive and greater than this Court might ordinarily approve for a routine FLSA case. Nevertheless, in the context of this particular settlement, the Court will approve the parties' agreement. The Court's acceptance of this settlement should not be regarded as, or represented to another Court, as an approval of [the lawyer's] requested hourly rate in FLSA cases."[14] *Patterson*, 2014 WL 169812, at *1 n.1. That case too is entitled to little or no weight here because it is too old to relate to the prevailing market rate in Jacksonville in 2019 and, like the others, provides no or insufficient information about the skills, experience, reputations, and services involved necessary to determine similarity and concomitant weight.

5.     *The Lodestar*

The number of hours reasonably expended (19 hours) multiplied by the reasonable hourly rate ($350) results in a lodestar of $6650.[15]

---

[14]In *Patterson*, the magistrate judge observed that an hourly rate of $350 for work done in 2013 "may not be reasonable" but did not decide the issue because it was unnecessary for approval of the settlement agreement, which included a negotiated amount for attorney's fees. 2014 WL 169812 at *6. The report and recommendation cited a 2009 case from this Court stating that the "going rate" for FLSA work in 2009 was between $150 and $250 an hour. *Id.*

[15]To the extent Arnold's statement that no fees should be discounted because of E&R's perceived bad "behavior" suggests that no reductions are warranted no matter what, that argument should fail. *See* Doc. 26 at 4. E&R's actions alone do not control whether all hours were reasonably expended and should be billed to E&R or whether the rate is reasonable. Similarly, E&R's statement that Arnold tries to "justify $7,600 in attorneys' fees for a complaint filed pursuant to the [FLSA] that took Plaintiff's counsel half an hour to draft" is entitled to no consideration. *See* Doc. 30 at 2. Arnold did not seek $7600 for drafting the complaint. The case may not be complex, but the appropriate standard is reasonable hours times a reasonable rate to get the lodestar and adjusting the lodestar if warranted.

6. *Lodestar Adjustment*

After determining the lodestar, a court must consider "the necessity of an adjustment[.]" *Norman*, 836 F.2d at 1302. On a downward adjustment, if a party achieved limited success, "the lodestar must be reduced to an amount that is not excessive." *Id.* On an upward adjustment, there is a "strong" presumption the lodestar suffices, and an upward adjustment may not be made based on any factor subsumed in the lodestar. *Perdue*, 559 U.S. at 553–54. That a fee exceeds any damages awarded does not necessarily make the fee unreasonable. *See P&k Rest. Enter., LLC*, 758 F. App'x at 851 (rejecting the argument that fees of $118,894.20 were unreasonable for a $6308 jury verdict and observing that fee awards are mandatory in FLSA cases and often exceed damages).

A downward adjustment for time spent after the offer of judgment is unwarranted for the reasons already discussed. No other adjustment is warranted. Because Arnold achieved substantial success, a downward adjustment is unwarranted. Because the lodestar already considers all pertinent factors, an upward adjustment is unwarranted. Because the hours were reasonably expended and the rate is reasonable, that the lodestar is greater than the damages awarded does not render the lodestar excessive. *See id.*

## C.   *Costs under 28 U.S.C. § 1920*

Section 1920 of Title 28 of the United States Code allows as taxable costs only:

(1)   Fees of the clerk and marshal;

(2)   Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)   Fees and disbursements for printing and witnesses;

(4)   Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

27

(5)     Docket fees under section 1923 of this title;

(6)     Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Section 1920 provides "rigid controls on cost-shifting in federal courts." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444 (1987). "[A]s is evident from § 1920," costs are "limited to relatively minor, incidental expenses," and "almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 573 (2012) (internal quotation marks omitted). A court may decline to tax costs in § 1920 but may not tax costs not in § 1920. *Crawford*, 482 U.S. at 442–43.

Proposed costs "should always be given careful scrutiny." *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964), *disapproved of on another ground by Crawford*, 482 U.S. at 443. If a prevailing party shows requested costs are taxable, the losing party may rebut the presumption favoring their award, *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991), by presenting at least some rationale why the court should decline to tax them, *168th & Dodge, LP v. Rave Reviews Cinemas, LLC*, 501 F.3d 945, 958 (8th Cir. 2007).

Under "Fees of the ... marshal," allowable costs include costs for private service of process in an amount that does not exceed what the United States Marshals Service charges. *EEOC v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000). For in–person service, the Marshals Service charges $65 an hour "plus travel costs and any other out-of-pocket expenses." 28 C.F.R. § 0.114(a)(3). "Out-of-pocket expenses include ... advertising, inventorying, storage, moving, insurance, guard hire, ... and any other third-party expenditure incurred in executing process." 28 C.F.R. § 0.114(b). "If a party seeks to recover private service fees without providing evidence of what hourly rate the private server charged, how much time he spent trying to

serve process, or other information needed to determine if his rate exceeded that charged by the Marshal, then the appropriate practice is to award the lesser of the amount that the party actually paid and the minimum charge of the U.S. Marshals." *Oleksy v. Gen. Elec. Co.*, No. 06–cv–1245, 2016 WL 7217725, at *3 (N.D. Ill. Dec. 12, 2016) (unpublished) (internal quotation marks omitted).

The costs Arnold requests are taxable under § 1920 as fees of the clerk ($400) and fees for service of process ($40), for total costs of $440. Arnold has made this showing through a description of the costs, Doc. 26 at 14, and the list of costs on the billing statement, Doc. 26-3 at 4.[16] The docket corroborates the payment of the filing fee. The presumption favoring costs applies. E&R has not rebutted the presumption, making no objection to those costs. *See generally* Doc. 30.

### D.   *Post-Judgment Interest*

A court must allow interest "on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). This includes interest for both attorney's fees and costs awarded in a FLSA case. *Mock v. Bell Helicopter Textron Inc.*, 456 F. App'x 799, 803 (11th Cir. 2012). Interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding … the judgment." 28 U.S.C. § 1961(a).

Awarding post-judgment interest for both attorney's fees and costs from entry of the judgment is warranted. E&R does not contend otherwise. *See generally* Doc. 30.

---

[16]The billing statement also shows costs of $1.30 for postage for a demand letter and $1.00 for postage for a letter. *See* Doc. 26-3 at 4. Arnold does not seek reimbursement for those costs.

## IV.   Recommendation

I recommend:

1.   **granting** the parties' motion for approval of the settlement, Doc. 24, and approving the settlement as a fair and reasonable resolution of disputed issues;

2.   **granting in part** Arnold's motion for attorney's fees and costs, Doc. 26, and approving as reasonable $6650 in attorney's fees and $440 in costs, plus interest under 28 U.S.C. § 1961(a) from the date of the judgment;

3.   **entering** judgment for Arnold and against E&R for $2000 for wages, $6650 for attorney's fees, and $440 for costs, plus interest on the attorney's fees and costs under 28 U.S.C. § 1961(a) from the date of the fee and cost judgment;

4.   **dismissing** the case with prejudice; and

5.   **directing** the Clerk of Court to close the file.[17]

**Done** in Jacksonville, Florida, on May 1, 2020.


PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:   The Honorable Marcia Morales Howard
Counsel of Record

---

[17]"Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.